# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ADDITIONAL PARTIES ATTACHMENT form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LIZABETH DYER

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| Electronically Filed |
| Superior Court of California |
| County of San Joaquin |
| 2024-04-22 15:19:07 |
| Clerk: Marcos Gomez |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SAN JOAQUIN SUPERIOR COURT
180 E. Weber Avenue
Stockton, CA 95202

| CASE NUMBER: |
|---|
| *(Número del Caso):* |
| STK-CV-UPI-2024-0004881 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dustin J. Dyer, Dyer Law Firm, 5250 Claremont Ave., Suite 119, Stockton, CA 95207 ; (209) 472-3668

DATE: 2024-04-22     Stephanie Bohrer    Clerk, by _____ , Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| LIZABETH DYER v. EXACTECH, INC, et al | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

EXACTECH, INC.; EXACTECH, US INC.; TPG, INC.; OSTEON HOLDINGS, INC.; OSTEONE MERGER SUB, INC.; OSTEON INTERMEDIATE HOLDINGS, II, INC. AND DOES 1-100, INCLUSIVE

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form |
|---|---|

| Clear this form |
|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Dustin J. Dyer - SBN 274308;  Zachary Z. Hardister - SBN 350299<br>DYER LAW FIRM - 5250 Claremont Ave, Suite 119, Stockton, CA  95202<br><br>TELEPHONE NO.: (209) 472-3668          FAX NO. :<br>EMAIL ADDRESS: ddyer@dyerlawfirm.com<br>ATTORNEY FOR *(Name):* Plaintiff  LIZABETH DYER | Electronically Filed<br>Superior Court of California<br>County of San Joaquin<br>2024-04-22 15:19:07<br>Clerk: Marcos Gomez |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF    SAN JOAQUIN**
STREET ADDRESS: 180 E. Weber Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Stockton, CA  95202
BRANCH NAME: STOCKTON BRANCH

STK-CV-UPI-2024-0004881

CASE NAME:
LIZABETH DYER v. EXACTECH, INC., et al

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER. |
|---|---|---|
| [x] **Unlimited** [ ] **Limited**<br>(Amount          (Amount<br>demanded         demanded is<br>exceeds $35,000)    $35,000 or less) | [ ] Counter      [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[x] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* Five (5)
5. This case [ ] is [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 04/22/2024
Dustin J. Dyer, Esq.
_____
(TYPE OR PRINT NAME)                    ► _____
                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**    | Print this form | | Save this form |    | Clear this form |

# SUPERIOR COURT OF CALIFORNIA

**County of San Joaquin**
**180 E Weber Avenue**
**Stockton, CA 95202**

### NOTICE OF CASE ASSIGNMENT AND NOTICE OF HEARING

Case Number: **STK-CV-UPI-2024-0004881**

A Case Management Conference has been scheduled for your case as indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action. Disregard hearing date if that date has expired.

| Hearing: Case Management Conference | Date: 12/11/2024 | Time: 8:45 AM Department: 10A |
|---|---|---|
| **JUDGE** | **COURT LOCATION** | **PHONE Numbers:** |
| THIS CASE HAS BEEN ASSIGNED TO JUDGE GEORGE J. ABDALLAH IN DEPARTMENT 10A FOR ALL PURPOSES, INCLUDING TRIAL. | Stockton | Stockton: 209-992-5693 <br> Lodi:    209-992-5522 |

[ **X** ] ADR & Scheduling Information is available on court website @ sjcourts.org/self-help

1. You must:

    a. **Serve** all named defendant's and file proofs of service on those defendants with the court Within 60 days of the filing of the complaint. (CRC 3.110)

    b. **File and serve** a completed Case Management Conference Statement (use of JC form CM-110 is mandatory) at least 15 days before the Case Management Conference.

    c. **Meet and Confer,** in person or by telephone, to consider each of the issues identified in CRC 3.727 no later than 30 calendar days before the date set for the Case Management Conference. (CRC 3.724)

    d. **Collection cases** are managed pursuant to CRC 3.740.

2. Case Management Conferences, Law and Motion and Ex Partes will be held remotely unless ordered otherwise. For telephonic appearance phone numbers, information and instructions visit @ https://www.sjcourts.org/divisions/civil/ .

3. If this case was eFiled, the plaintiff/petitioner or their attorney must access their copy of this notice and the issued summons for service from the court's case management system at the following link: cms.sjcourts.org/fullcourtweb/start.do.

4. Courtesy Copies: Courtesy copies must be submitted as outlined in Local Rule 3-117. Courtesy copies (only) may be placed in the drop boxes located on the 10th and 11th floor. Courtesy copies can also be placed in the drop box located outside of the courthouse.

Visit our website @ www.sjcourts.org for more information regarding civil cases, local rules and forms.

Date: 04/22/2024                                    _____Marcos Gomez_____,Deputy Clerk

### NOTICE OF CASE ASSIGNMENT AND NOTICE OF HEARING

Dustin J. Dyer, SBN 274308
DYER LAW FIRM
5250 Claremont Ave., Suite 119
Stockton, CA 95207
ddyer@dyerlawfirm.com

Attorney for Plaintiff,
LIZABETH DYER

Electronically Filed
Superior Court of California
County of San Joaquin
2024-04-22 15:19:07
Clerk: Marcos Gomez

Case Management Conference
2024-12-11 8:45AM in 10A

STK-CV-UPI-2024-0004881

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN JOAQUIN

| | |
|---|---|
| LIZABETH DYER,<br><br>        Plaintiff,<br><br>vs.<br><br>EXACTECH, INC.; EXACTECH, US, INC.; TPG, INC.; OSTEON HOLDINGS, INC.; OSTEONE MERGER SUB, INC.; OSTEON INTERMEDIATE HOLDINGS II, INC. AND DOES 1-100, INCLUSIVE,<br><br>        Defendants | Case No:<br><br>**COMPLAINT FOR DAMAGES**<br>  1. Negligence<br>  2. Res Ipsa Loquitor<br>  3. Breach of Express Warranty<br>  4. Breach of Implied Warranty<br>  5. Strict Products Liability for Manufacture and Design Defect and for Failure to Warn<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

1.     NOW COMES Plaintiff LIZABETH DYER ("Plaintiff"), by and through the undersigned attorneys, and bring this action against Exactech, Inc. ("Exactech"); Exactech US, Inc. ("Exactech US"); TPG, Inc. a/k/a TPG Capital, LP (f/k/a TPG Partners, LLC); Osteon Holdings, Inc. (f/k/a Osteon Holdings, L.P.); Osteon Merger Sub, Inc.; and Osteon Intermediate Holdings II, Inc. for personal injuries suffered as a proximate result of Plaintiff's use and subsequent failure of a knee

1

COMPLAINT

replacement device designed, manufactured, and sold by these entities and in support alleges as follows:

2.    Exactech, Inc. and Exactech U.S., Inc. (collectively "Exactech" or "Exactech Defendants") failed patients and operating surgeons by designing, manufacturing, and selling defective and unreasonably Exactech, Inc. and Exactech U.S., Inc. (collectively "Exactech" or "Exactech Defendants") failed patients and operating surgeons by designing, manufacturing, and selling defective and unreasonably dangerous knee joint replacement systems.

3.    The defects in Exactech's orthopedic devices knee joint replacement components sold in the U.S. including all of the following: Knee Implant Systems: Optetrak Comprehensive Total Knee System ("Optetrak"), Optetrak Logic Comprehensive Knee System ("Optetrak Logic"), and Truliant Comprehensive Total Knee System ("Truliant") (collectively "Exactech Knee Devices").

4.    As further described herein, the claims specifically asserted by Plaintiff in this Complaint relate to one or more Exactech Knee Devices.

5.    Defendant Exactech, Inc. is a Florida corporation with its principal place of business at 2320 NW 66th Street, Gainesville, FL 32653. Exactech, Inc. is a citizen of Florida.

6.    Defendant Exactech U.S., Inc. is a Florida corporation with its principal place of business at 2320 NW 66th Street, Gainesville, FL 32653. Exactech U.S., Inc. is a citizen of Florida.

7.    At all times relevant to this action, Defendant Exactech, Inc. and Defendant Exactech, US, Inc. designed, tested, studied, researched, formulated, manufactured, inspected, labeled, packaged, stored, promoted, advertised, marketed, distributed, and/or sold Exactech Knee Devices throughout the United States, including in the State of California, County of San Joaquin.

8.    At all times relevant to this action, Exactech Defendants received substantial revenue from goods used or consumed, or services rendered, in the State of California, County of San Joaquin.

2

COMPLAINT

9.    At all times relevant to this action, Exactech Defendants were in the business of and profited from the design, manufacture, marketing, distribution and/or sale of medical devices, including the Exactech Knee Devices that were implanted in Plaintiff.

10.    At all times relevant to this action, Exactech Defendants were responsible for placing the Exactech Devices implanted into Plaintiff into the stream of commerce and advertised, marketed, distributed, and/or sold such products either directly or indirectly to members of the general public, including Plaintiff.

11.    Defendant TPG, Inc. ("TPG"), also known as TPG Capital, LP and formerly known as TPG Partners, LLC, is a Delaware corporation that has its principal place of business at 301 Commerce Street, Suite 3300, Fort Worth, TX 76102. TPG, Inc. is a citizen of Delaware and Texas.

12.    In February 2018, TPG paid over $737 million to merge with and acquire Exactech ("2018 Merger").

13.    TPG is not a passive investor. It touts its ability to "create products and services [that have] delivered breakthrough innovation" in the healthcare industry, as well as its "unique approach" to "building great companies."

14.    Osteon Holdings, L.P. is an indirect wholly owned subsidiary or indirect beneficially owned affiliate of TPG.

15.    Osteon Holdings, L.P. converted to Osteon Holdings, Inc. in or around February 2018.

16.    Defendant Osteon Holdings, Inc. is a Delaware corporation that has its principal place of business at 301 Commerce Street, Suite 300, Fort Worth, TX 76102, and is an indirect wholly owned subsidiary or indirect beneficially owned affiliate of TPG. Osteon Holdings, Inc. is a citizen of Delaware and Texas.

COMPLAINT

17.     Defendant Osteon Merger Sub, Inc. is a Florida corporation that has its principal place of business at 301 Commerce Street, Suite 3300, Fort Worth, TX 76102, and is a wholly owned subsidiary of Osteon Holdings, Inc. Osteon Merger Sub, Inc. is a citizen of Florida and Texas.

18.     Defendant Osteon Intermediate Holdings II, Inc., is a Delaware corporation that has its principal place of business at 2320 NW 66th Court, Gainesville, FL 32653 and has been identified in public court filings as the Parent corporation of Exactech, Inc. Osteon Intermediate Holdings II, Inc. is a citizen of Delaware and Florida.

19.     Defendant Osteon Holdings, Inc. (formerly known as Osteon Holdings, LP), Defendant Osteon Merger Sub, Inc., and Defendant Osteon Intermediate Holdings II, Inc. (hereinafter "Osteon") are controlled by TPG.

20.     Defendant TPG, through and in concert with related Defendant entities Osteon Holdings, Inc. (formerly known as Osteon Holdings, LP), Osteon Merger Sub, Inc., and Osteon Intermediate Holdings II, Inc. (collectively, "TPG" or "TPG Defendants") and related non-parties including TPG Partners VII, L.P. (an affiliate of Osteon Holdings, Inc. and Osteon Merger Sub, Inc.), TPG Genpar VII, L.P. (a general partner of TPG Partners VII, L.P.), and TPG Genpar VII Advisors, LLC (a general partner of TPG Genpar VII, L.P.) exercised control over the acquisition of Exactech and subsequent operations of Exactech for their direct benefit and they used Exactech to engage in improper conduct as outlined herein and caused harm to Plaintiffs through such improper conduct.

21.     TPG Defendants used Exactech as an agent, alter ego, and mere instrumentality such that TPG Defendants maintained control over Exactech. Moreover, Exactech and TPG Defendants should be held jointly and severally liable for each other's conduct.

## SURGICAL FACTS

22.     On February 10, 2014, Plaintiff received a right full knee replacement surgery. The operative implants included Optetrak Femoral Component Cruciate Retained, Cemented (Ref # 200-01-02); Optetrak Tibial Tray Cement, Finned (Ref # 200-04 -22); Optetrak 3 Peg Patella Cemented

4

COMPLAINT

(Ref No. 200-22-29) and Optetrak Tibial Insert Cruciate Retained Size 2, 11mm (Ref # 200-22-11). This surgery occurred without issue.

23.   On April 21, 2014, Plaintiff received a left full knee replacement surgery. The operative implants included Optetrak Femoral Component Crucite Retained, Cemented (Ref # 200-01-02); Optetrak Tibial Tray Cement, Finned (Ref # 200-04 -22); Optetrak 3 Peg Patella Cemented (Ref No. 200-22-29) and Optetrak Tibial Insert Cruciate Retained Size 2, 11mm (Ref # 200-22-13). This surgery occurred without issue.

24.   From 2014 through 2024, Plaintiff endured significant pain as a result of the Knee Devices. As a result of the constant pain in her knees and legs, Plaintiff continually had issues participating in nearly all aspects of her life including working as an elementary school teacher.

25.   Additionally, as a result of the constant pain and discomfort Plaintiff was forced to give up the majority of her hobbies and activities. This in turn has caused Plaintiff to have significant depression and affected every aspect of Plaintiff's life.

26.   After having significant pain for years, Plaintiff scheduled x-rays with her healthcare provider regarding her knees. As a result of the x-rays, Plaintiff was scheduled to meet with her orthopedist in January of 2023. At this January 2023 healthcare appointment, Plaintiff's orthopedist, Dr. Sidhu, identified that her knee replacements appeared to have failed and provided Plaintiff with identification of the Knee Devices.

27.   Upon discovering in January of 2023 that her Knee Devices were defective, Plaintiff conducted internet research and discovered that they were defective. At no point prior to January of 2023, did Plaintiff become aware of the defective nature of her Knee Devices or that the devices had been recalled.

28.   On May 24, 2023, Plaintiff underwent surgery for a failed right total knee replacement due to ongoing pain and knowledge that the products were defective.

29.     On or about March 27, 2024 Plaintiff underwent surgery for a failed left total knee replacement due to ongoing pain and knowledge that the products were defective.

30.     DEFENDANTS were aware of high rate of unexplained failures of the Knee Devices but did not provide this information to Plaintiff or Plaintiff's orthopedic surgeons.

31.     After becoming aware of the defective nature of the Knee Devices, DEFENDANTS continued to market and sell the Knee Devices to orthopedic surgeons in California and throughout the county.

32.     DEFENDANTS misrepresented the safety and effectiveness of the Knee Devices to Plaintiff. The device was defective, and DEFENDANT'S collective manufacture, sale, distribution and promotion of the defective device cause physical and emotional harm to Plaintiff as described below.

33.     As a result of DEFENDANTS failure to provide this crucial information about the failure of the device to Plaintiff or Plaintiff's orthopedic surgeons, neither Plaintiff nor Plaintiff's orthopedic surgeons had reason to suspect that the source of Plaintiff's ongoing pain, illness and weakness was the result of the failure of the Knee Devices.

34.     As a direct and proximate result of DEFENDANTS placing the defective product, the Knee Devices, into the stream of commerce and DEFENDANTS' further failure to communicate their knowledge of the widespread failure of the device, Plaintiff has suffered and continue to suffer both injuries and damages, including but not limited to past, present and future pain and suffering, disability, disfigurement, expenses for medical, hospital, monitoring, rehabilitative and pharmaceutical costs, and lost wages or earnings.

**FIRST CAUSE OF ACTION**

**(Negligence, against all Defendants)**

35.     Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

6

COMPLAINT

36.     At all times herein mentioned, DEFENDANTS, and each of them, had a duty to properly design, manufacture, test, inspect, package, label distribute and market the Knee Devices

37.     At all times herein mentioned, DEFENDANTS, and each of them, knew, or in the exercise of reasonable care should have known, that the Knee Devices was a medical device of such a nature that if it was not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, and marketed for the use and purpose for which it was intended, it was likely to cause serious injury to individuals with the Knee Devices surgically implanted in their knees. Further, DEFENDANTS, and each of them, knew, or in the exercise of reasonable care should have known, that a failure of the Knee Devices exposed each implanted individual to the serious consequences of having to undergo additional surgery for revisions of failed.

38.     DEFENDANTS, and each of them, so negligently and carelessly designed, manufactured, tested or failed to test, inspected or failed to inspect, packaged, labeled, distributed, recommend, displayed and sold said product that the product was a defective and dangerous product, and unsafe for the use and purpose for which it was intended when used and applied as recommend by the DEFENDANTS, and each of them.

39.     Because of the aforementioned negligence of the DEFENDANTS, each of them, in the design, manufacture, testing, inspection, packaging, labeling, distribution, recommendation, display, and sale of said product, said product caused extreme pain to Plaintiff and required Plaintiff to undergo additional revision surgeries.

40.     As a proximate result of the negligence of DEFENDANTS, and each of them, Plaintiff suffered grievous personal injury in having to suffer for a period years with a very painful defective implant in her knees, and further were required to undergo a very painful and invasive revision surgery to remove the parts of the defective Knee Devices to be replaced with another total knee replacement system.

7

COMPLAINT

41.     The requisite post-surgical therapies and the full nature and extent of said injuries are ongoing and not fully known to Plaintiff at this time, but Plaintiff is informed and believe and therefore allege that said injuries are permanent by reason of the foregoing.

42.     As a further proximate result of the negligence of the DEFENDANTS, and each of them, Plaintiff has incurred, and will continue to incur, medical, surgical and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Res Ipsa Loquitor, against all Defendants)

43.     Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

44.     The character of the defective failure of the Knee Devices was such that it would not ordinarily occur without negligence.

45.     The DEFENDANTS designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed and sold the Knee Devices. As such the Knee Devices was under the custody and control of the DEFENDANTS.

46.     DEFENDANTS and their agents were in control of the Knee Devices at issue in this lawsuit at the time the negligence occurred in the design, manufacture and warranties of the defective product so that the reasonable probabilities point to the DEFENDANTS and support a reasonable inference that DEFENDANTS were the negligent parties.

47.     DEFENDANTS had superior knowledge or means of information to determine the cause of the incident that is the basis of this lawsuit

48.     By reason of the above and foregoing circumstances, among others, the jury is permitted to infer the DEFENDANTS negligence in designing, manufacturing, testing, inspecting, packaging, labeling, distributing, and marketing of the Knee Devices.

8

COMPLAINT

## THIRD CAUSE OF ACTION

### (Breach of Express Warranty, against all Defendants)

49. Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

50. At all times herein mentioned, between at least 2007 and 2017, DEFENDANTS, and each of them, utilized advertising media to urge the use and application of the Knee Devices and expressly warranted to Plaintiff and other members of the general public that the Knee Devices was effective, proper, and safe for its intended use.

51. Plaintiff relied on the said express warranty representations of the DEFENDANTS, and each of them, in the purchase of the Knee Devices, and said representations became apart of the basis of the decision by the Plaintiff and her physicians in selecting the Knee Devices for the two total knee replacements undergone by Plaintiff.

52. Said express warranty representations were false in that the Knee Devices has not been adequately designed, manufactured, or tested and was defective. As such, DEFENDANTS, and each of them, thereby breached said warranty.

53. As a proximate result of said effects in said product, resulting in the breach of express warranty of DEFENDANTS, and each of them, as alleged above, Plaintiff suffered grievous personal injury by living with a painful, defective implant in her knees and was required to undergo two separate painful and invasive revision surgery to remove the parts of the defective Knee Devices when it was replaced with another total knee replacement system.

54. As a proximate result of said defects in the Knee Devices resulting in the breach of express warranty of DEFENDANTS, and each of them, as alleged above, Plaintiff have incurred, and will continue to incur, medical, surgical and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial. Plaintiff is informed and believe and therefore allege that said injuries are permanent.

9

COMPLAINT

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty, against all Defendants)

55. Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

56. Prior to and at the time the DEFENDANTS sold the Knee Devices to Plaintiff and prior to the time Plaintiff was implanted with the defective Knee Devices, DEFENDANTS, and each of them, impliedly warranted to Plaintiff that the Knee Devices were of merchantable quality and safe for the use for which it was intended by the DEFENDANTS, a namely a safe total knee replacement that would not require revision surgery.

57. DEFENDANTS relied on the safety and merchantability of the product created and sold by DEFENDANTS, and each of them, when selecting and selling the Knee Devices. During their surgeries, and until her Knee Devices were removed during the revision surgery, Plaintiff used the product in a foreseeable and intended manner.

58. The Knee Devices were not safe for its intended use, or of merchantable quality as warranted by the DEFENDANTS, in that the Knee Devices failed, became loose and caused Plaintiff excessive pain.

59. The Knee Devices caused severe and grievous injuries to Plaintiff, subjecting Plaintiff to great pain and two additional revision surgery to remove the defective Knee Devices from Plaintiff's body.

60. As a result of the defects in the Knee Devices and the breach of implied warranty of DEFENDANTS, as alleged above, Plaintiff suffered grievous personal injury. Plaintiff had to suffer for a period of months or years with a painful defective implant in her knees, after which Plaintiff were required to undergo a very painful and invasive revision surgery to remove the parts of the defective Knee Devices and replace it with another total knee replacement system.

10

COMPLAINT

61.     As a result of said defects in said product and the breach of implied warranty of DEFENDANTS, as alleged above, Plaintiff has incurred, and will continue to incur, medical, surgical, and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to the proof at trial.

## FIFTH CAUSE OF ACTION

**(Strict Products Liability for Manufacture and Design Defects and Failure to warn, against All DEFENDANTS)**

62.     Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

63.     At all times mentioned herein, DEFENDANTS, and each of them, designed, manufactured, assembled, tested, inspected, maintained, distributed, marketed, promoted, advertised, and/or sold the Knee Devices and their component parts that were implanted in Plaintiff for use by patients including Plaintiff, and physicians and hospitals in treating members of the general public. DEFENDANTS, and each of them, also designed, manufactured, assembled, tested, inspected, maintained, distributed, marketed, promoted, advertised, and/or sold the labeling and instructions for the Knee Devices and their component parts that were implanted in Plaintiff for use by patients, including Plaintiff, and physicians and hospitals in treating members of the general public.

64.     At all times mentioned herein, DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the Knee Devices, their component parts and its labeling and instructions were a product of such a nature that if they were not properly designed, manufactured, assembled, compounded, tested, inspected, fabricated, constructed, analyzed, distributed, serviced, merchandized, recommended, advertised, promoted, marketed and sold for the use and purpose for which they were intended, they were likely to injure the person or persons upon whom they were used.

11

COMPLAINT

65. At the time of the Plaintiff's surgeries the Knee Devices were being used for the purpose for which it was intended and the way it was intended to be used. After being implanted with the Knee Devices, Plaintiff used the Knee Devices as knee replacements in a manner for which it was reasonably foreseeable that it would be used. DEFENDANTS knew that the patients, including Plaintiff, would use the subjected to the Knee Devices, their component parts and their labeling and instructions without being able to inspect them or become aware of their defective nature. Plaintiff did not know and had no reason to suspect or know that the Knee Devices, their component parts or their labeling and instructions were defective and unsafe for use.

66. The Knee Devices, their component parts, their labeling, and its instructions were defective at the time of its design, manufacture, testing, production, inspection, sale and distribution, including lack of warnings or adequate consumer information at the time it was placed in the stream of commerce. The products instructions and direction for implantation failed to warn of the dangerous propensities of the said product, which risks were known or reasonably scientifically knowable to DEFENDANTS. The DEFENDANTS, and each of them, know or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

67. Specifically, DEFENDANTS knew or should have known that the Knee Devices defective and subject to recall

68. The Knee Devices were implanted in Plaintiff without substantial change in their condition in which it was sold.

69. DEFENDANTS, and each of them, failed to warn consumers in general, Plaintiff or Plaintiff's physicians of the risk of the Knee Devices.

70. As a result of the defect of the Knee Devices, Plaintiff suffered serious injury and pain and required two separate painful invasive revision surgeries to replace the defective Knee Devices, which caused Plaintiff to sustain the injuries and damages set forth herein.

12

COMPLAINT

71.    Plaintiff have incurred, and will continue to incur, medical and surgical expenses, loss of earnings and earning capacity, and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial.

72.    Plaintiff is informed and believe that DEFENDANTS, and each of them, knew that the Knee Devices had a higher than normal risk of failure for a similarly designed and manufactured medical device when used for the purpose for which the DEFENDANTS foreseeably intended it to be used, and that DEFENDANTS had prior notice and knowledge from several sources that the Knee Devices, their component parts and their labeling presented a foreseeable risk of harm to Plaintiff and the general public. DEFENDANTS, and each of them, acted with malice, fraud, or oppression towards the Plaintiff in allowing a dangerous product to be used by members of the public without proper warning of the unreasonable risk of failure. As such, DEFENDANTS, and each of them, engaged in despicable conduct with a conscious disregard for the rights or safety or others, and subjected the Plaintiff to cruel and unjust hardship and physical pain with a conscious disregard of her rights. DEFENDANTS, and each of them knew or should have know of the probable harmful consequences of its wrongful acts in manufacturing and distributing a defectively designed product, and willfully and deliberately failed to act to avoid those consequences.

73.    As a result of the DEFENDANTS' conduct as alleged herein, Plaintiff is entitled to exemplary and punitive damages.

WHEREFORE, Plaintiff prays for judgement against each DEFENDANT as follows:

1.  For past and future general damages, according to proof;

2.  For past and future medical and incidental expenses, according to proof;

3.  For past and future loss of earnings and/or earning capacity, according to proof;

4.  For future medical monitoring costs, according to proof;

5.  For punitive and exemplary damages in a n amount to be determined at trial;

13

COMPLAINT

6. For prejudgment interest on all damages as is allowed by the laws of the State of California;

7. For past and future mental and emotional distress, according to proof;

8. For past and future costs of suit incurred herein;

9. For a disgorgement of profits, according to proof; and

10. For such other and further relief as the Court deems just and proper.

Dated: April 22, 20224                    By: _____
                                              DUSTIN J. DYER
                                              Attorney for Plaintiff

COMPLAINT

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ADDITIONAL PARTIES ATTACHMENT form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LIZABETH DYER

<table>
<tr><td>

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
Electronically Filed
Superior Court of California
County of San Joaquin
2024-04-22 15:19:07
Clerk: Marcos Gomez
</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SAN JOAQUIN SUPERIOR COURT
180 E. Weber Avenue
Stockton, CA 95202

CASE NUMBER:
*(Número del Caso):*
STK-CV-UPI-2024-0004881

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dustin J. Dyer, Dyer Law Firm, 5250 Claremont Ave., Suite 119, Stockton, CA 95207 ; (209) 472-3668

DATE: 2024-04-22         Stephanie Bohrer   Clerk, by _____, Deputy
*(Fecha)*                                   *(Secretario)*                                   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>LIZABETH DYER v. EXACTECH, INC, et al | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

EXACTECH, INC.; EXACTECH, US INC.; TPG, INC.; OSTEON HOLDINGS, INC.; OSTEONE MERGER SUB, INC.; OSTEON INTERMEDIATE HOLDINGS, II, INC. AND DOES 1-100, INCLUSIVE

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form |
|---|---|

Clear this form

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Dustin J. Dyer - SBN 274308;  Zachary Z. Hardister - SBN 350299<br>DYER LAW FIRM - 5250 Claremont Ave, Suite 119, Stockton, CA  95202<br><br>TELEPHONE NO.: (209) 472-3668          FAX NO. :<br>EMAIL ADDRESS: ddyer@dyerlawfirm.com<br>ATTORNEY FOR *(Name):* Plaintiff  LIZABETH DYER | **FOR COURT USE ONLY**<br><br>Electronically Filed<br>Superior Court of California<br>County of San Joaquin<br>2024-04-22 15:19:07<br>Clerk: Marcos Gomez |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SAN JOAQUIN<br>STREET ADDRESS: 180 E. Weber Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Stockton, CA  95202<br>BRANCH NAME: STOCKTON BRANCH | STK-CV-UPI-2024-0004881 |

| CASE NAME:<br>LIZABETH DYER v. EXACTECH, INC., et al |
|---|

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER. |
|---|---|---|
| [x] Unlimited<br>(Amount demanded exceeds $35,000) | [ ] Limited<br>(Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder |  |
|  |  | Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[x] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Five (5)
5. This case [ ] is  [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 04/22/2024

Dustin J. Dyer, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner
      Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
   Antitrust/Trade Regulation (03)
   Construction Defect (10)
   Claims Involving Mass Tort (40)
   Securities Litigation (28)
   Environmental/Toxic Tort (30)
   Insurance Coverage Claims
      *(arising from provisionally complex
      case type listed above)* (41)
**Enforcement of Judgment**
   Enforcement of Judgment (20)
      Abstract of Judgment (Out of County)
      Confession of Judgment *(non-domestic
      relations)*
      Sister State Judgment
      Administrative Agency Award
         *(not unpaid taxes)*
      Petition/Certification of Entry of
         Judgment on Unpaid Taxes
      Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
   RICO (27)
   Other Complaint *(not specified above)* (42)
      Declaratory Relief Only
      Injunctive Relief Only *(non-
         harassment)*
      Mechanics Lien
      Other Commercial Complaint
         Case *(non-tort/non-complex)*
      Other Civil Complaint
         *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
   Partnership and Corporate
      Governance (21)
   Other Petition *(not specified above)* (43)
      Civil Harassment
      Workplace Violence
      Elder/Dependent Adult Abuse
      Election Contest
      Petition for Name Change
      Petition for Relief From Late Claim
      Other Civil Petition

CM-010 [Rev. January 1, 2024]          **CIVIL CASE COVER SHEET**          Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.    | Print this form |  | Save this form |          | Clear this form |

# SUPERIOR COURT OF CALIFORNIA

**County of San Joaquin**
**180 E Weber Avenue**
**Stockton, CA 95202**

## NOTICE OF CASE ASSIGNMENT AND NOTICE OF HEARING

### Case Number: **STK-CV-UPI-2024-0004881**

A Case Management Conference has been scheduled for your case as indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action. Disregard hearing date if that date has expired.

| Hearing: Case Management Conference | Date: 12/11/2024 | Time: 8:45 AM Department: 10A |
|---|---|---|
| **JUDGE** | **COURT LOCATION** | **PHONE Numbers:** |
| THIS CASE HAS BEEN ASSIGNED TO JUDGE GEORGE J. ABDALLAH IN DEPARTMENT 10A FOR ALL PURPOSES, INCLUDING TRIAL. | Stockton | Stockton: 209-992-5693 <br> Lodi:    209-992-5522 |

[ **X** ] ADR & Scheduling Information is available on court website @ sjcourts.org/self-help

1.  You must:

    a.  **Serve** all named defendant's and file proofs of service on those defendants with the court Within 60 days of the filing of the complaint. (CRC 3.110)

    b.  **File and serve** a completed Case Management Conference Statement (use of JC form CM-110 is mandatory) at least 15 days before the Case Management Conference.

    c.  **Meet and Confer,** in person or by telephone, to consider each of the issues identified in CRC 3.727 no later than 30 calendar days before the date set for the Case Management Conference. (CRC 3.724)

    d.  **Collection cases** are managed pursuant to CRC 3.740.

2.  Case Management Conferences, Law and Motion and Ex Partes will be held remotely unless ordered otherwise. For telephonic appearance phone numbers, information and instructions visit @ https://www.sjcourts.org/divisions/civil/ .

3.  If this case was eFiled, the plaintiff/petitioner or their attorney must access their copy of this notice and the issued summons for service from the court's case management system at the following link: cms.sjcourts.org/fullcourtweb/start.do.

4.  Courtesy Copies: Courtesy copies must be submitted as outlined in Local Rule 3-117. Courtesy copies (only) may be placed in the drop boxes located on the 10th and 11th floor. Courtesy copies can also be placed in the drop box located outside of the courthouse.

Visit our website @ www.sjcourts.org for more information regarding civil cases, local rules and forms.

Date: 04/22/2024                                    _____Marcos Gomez_____,Deputy Clerk

## NOTICE OF CASE ASSIGNMENT AND NOTICE OF HEARING

Dustin J. Dyer, SBN 274308
DYER LAW FIRM
5250 Claremont Ave., Suite 119
Stockton, CA 95207
ddyer@dyerlawfirm.com

Attorney for Plaintiff,
LIZABETH DYER

Electronically Filed
Superior Court of California
County of San Joaquin
2024-04-22 15:19:07
Clerk: Marcos Gomez

Case Management Conference
2024-12-11 8:45AM in 10A

STK-CV-UPI-2024-0004881

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN JOAQUIN

LIZABETH DYER,

        Plaintiff,

   vs.

EXACTECH, INC.; EXACTECH, US, INC.; TPG, INC.; OSTEON HOLDINGS, INC.; OSTEONE MERGER SUB, INC.; OSTEON INTERMEDIATE HOLDINGS II, INC. AND DOES 1-100, INCLUSIVE,

        Defendants

Case No:

**COMPLAINT FOR DAMAGES**
   1. Negligence
   2. Res Ipsa Loquitor
   3. Breach of Express Warranty
   4. Breach of Implied Warranty
   5. Strict Products Liability for Manufacture and Design Defect and for Failure to Warn

**DEMAND FOR JURY TRIAL**

## GENERAL ALLEGATIONS

1.    NOW COMES Plaintiff LIZABETH DYER ("Plaintiff"), by and through the undersigned attorneys, and bring this action against Exactech, Inc. ("Exactech"); Exactech US, Inc. ("Exactech US"); TPG, Inc. a/k/a TPG Capital, LP (f/k/a TPG Partners, LLC); Osteon Holdings, Inc. (f/k/a Osteon Holdings, L.P.); Osteon Merger Sub, Inc.; and Osteon Intermediate Holdings II, Inc. for personal injuries suffered as a proximate result of Plaintiff's use and subsequent failure of a knee

1

COMPLAINT

replacement device designed, manufactured, and sold by these entities and in support alleges as follows:

2.    Exactech, Inc. and Exactech U.S., Inc. (collectively "Exactech" or "Exactech Defendants") failed patients and operating surgeons by designing, manufacturing, and selling defective and unreasonably Exactech, Inc. and Exactech U.S., Inc. (collectively "Exactech" or "Exactech Defendants") failed patients and operating surgeons by designing, manufacturing, and selling defective and unreasonably dangerous knee joint replacement systems.

3.    The defects in Exactech's orthopedic devices knee joint replacement components sold in the U.S. including all of the following: Knee Implant Systems: Optetrak Comprehensive Total Knee System ("Optetrak"), Optetrak Logic Comprehensive Knee System ("Optetrak Logic"), and Truliant Comprehensive Total Knee System ("Truliant") (collectively "Exactech Knee Devices").

4.    As further described herein, the claims specifically asserted by Plaintiff in this Complaint relate to one or more Exactech Knee Devices.

5.    Defendant Exactech, Inc. is a Florida corporation with its principal place of business at 2320 NW 66th Street, Gainesville, FL 32653. Exactech, Inc. is a citizen of Florida.

6.    Defendant Exactech U.S., Inc. is a Florida corporation with its principal place of business at 2320 NW 66th Street, Gainesville, FL 32653. Exactech U.S., Inc. is a citizen of Florida.

7.    At all times relevant to this action, Defendant Exactech, Inc. and Defendant Exactech, US, Inc. designed, tested, studied, researched, formulated, manufactured, inspected, labeled, packaged, stored, promoted, advertised, marketed, distributed, and/or sold Exactech Knee Devices throughout the United States, including in the State of California, County of San Joaquin.

8.    At all times relevant to this action, Exactech Defendants received substantial revenue from goods used or consumed, or services rendered, in the State of California, County of San Joaquin.

2

COMPLAINT

9.    At all times relevant to this action, Exactech Defendants were in the business of and profited from the design, manufacture, marketing, distribution and/or sale of medical devices, including the Exactech Knee Devices that were implanted in Plaintiff.

10.    At all times relevant to this action, Exactech Defendants were responsible for placing the Exactech Devices implanted into Plaintiff into the stream of commerce and advertised, marketed, distributed, and/or sold such products either directly or indirectly to members of the general public, including Plaintiff.

11.    Defendant TPG, Inc. ("TPG"), also known as TPG Capital, LP and formerly known as TPG Partners, LLC, is a Delaware corporation that has its principal place of business at 301 Commerce Street, Suite 3300, Fort Worth, TX 76102. TPG, Inc. is a citizen of Delaware and Texas.

12.    In February 2018, TPG paid over $737 million to merge with and acquire Exactech ("2018 Merger").

13.    TPG is not a passive investor. It touts its ability to "create products and services [that have] delivered breakthrough innovation" in the healthcare industry, as well as its "unique approach" to "building great companies."

14.    Osteon Holdings, L.P. is an indirect wholly owned subsidiary or indirect beneficially owned affiliate of TPG.

15.    Osteon Holdings, L.P. converted to Osteon Holdings, Inc. in or around February 2018.

16.    Defendant Osteon Holdings, Inc. is a Delaware corporation that has its principal place of business at 301 Commerce Street, Suite 300, Fort Worth, TX 76102, and is an indirect wholly owned subsidiary or indirect beneficially owned affiliate of TPG. Osteon Holdings, Inc. is a citizen of Delaware and Texas.

3

COMPLAINT

17. Defendant Osteon Merger Sub, Inc. is a Florida corporation that has its principal place of business at 301 Commerce Street, Suite 3300, Fort Worth, TX 76102, and is a wholly owned subsidiary of Osteon Holdings, Inc. Osteon Merger Sub, Inc. is a citizen of Florida and Texas.

18. Defendant Osteon Intermediate Holdings II, Inc., is a Delaware corporation that has its principal place of business at 2320 NW 66th Court, Gainesville, FL 32653 and has been identified in public court filings as the Parent corporation of Exactech, Inc. Osteon Intermediate Holdings II, Inc. is a citizen of Delaware and Florida.

19. Defendant Osteon Holdings, Inc. (formerly known as Osteon Holdings, LP), Defendant Osteon Merger Sub, Inc., and Defendant Osteon Intermediate Holdings II, Inc. (hereinafter "Osteon") are controlled by TPG.

20. Defendant TPG, through and in concert with related Defendant entities Osteon Holdings, Inc. (formerly known as Osteon Holdings, LP), Osteon Merger Sub, Inc., and Osteon Intermediate Holdings II, Inc. (collectively, "TPG" or "TPG Defendants") and related non-parties including TPG Partners VII, L.P. (an affiliate of Osteon Holdings, Inc. and Osteon Merger Sub, Inc.), TPG Genpar VII, L.P. (a general partner of TPG Partners VII, L.P.), and TPG Genpar VII Advisors, LLC (a general partner of TPG Genpar VII, L.P.) exercised control over the acquisition of Exactech and subsequent operations of Exactech for their direct benefit and they used Exactech to engage in improper conduct as outlined herein and caused harm to Plaintiffs through such improper conduct.

21. TPG Defendants used Exactech as an agent, alter ego, and mere instrumentality such that TPG Defendants maintained control over Exactech. Moreover, Exactech and TPG Defendants should be held jointly and severally liable for each other's conduct.

## SURGICAL FACTS

22. On February 10, 2014, Plaintiff received a right full knee replacement surgery. The operative implants included Optetrak Femoral Component Cruciate Retained, Cemented (Ref # 200-01-02); Optetrak Tibial Tray Cement, Finned (Ref # 200-04 -22); Optetrak 3 Peg Patella Cemented

4

COMPLAINT

(Ref No. 200-22-29) and Optetrak Tibial Insert Cruciate Retained Size 2, 11mm (Ref # 200-22-11). This surgery occurred without issue.

23. On April 21, 2014, Plaintiff received a left full knee replacement surgery. The operative implants included Optetrak Femoral Component Crucite Retained, Cemented (Ref # 200-01-02); Optetrak Tibial Tray Cement, Finned (Ref # 200-04 -22); Optetrak 3 Peg Patella Cemented (Ref No. 200-22-29) and Optetrak Tibial Insert Cruciate Retained Size 2, 11mm (Ref # 200-22-13). This surgery occurred without issue.

24. From 2014 through 2024, Plaintiff endured significant pain as a result of the Knee Devices. As a result of the constant pain in her knees and legs, Plaintiff continually had issues participating in nearly all aspects of her life including working as an elementary school teacher.

25. Additionally, as a result of the constant pain and discomfort Plaintiff was forced to give up the majority of her hobbies and activities. This in turn has caused Plaintiff to have significant depression and affected every aspect of Plaintiff's life.

26. After having significant pain for years, Plaintiff scheduled x-rays with her healthcare provider regarding her knees. As a result of the x-rays, Plaintiff was scheduled to meet with her orthopedist in January of 2023. At this January 2023 healthcare appointment, Plaintiff's orthopedist, Dr. Sidhu, identified that her knee replacements appeared to have failed and provided Plaintiff with identification of the Knee Devices.

27. Upon discovering in January of 2023 that her Knee Devices were defective, Plaintiff conducted internet research and discovered that they were defective. At no point prior to January of 2023, did Plaintiff become aware of the defective nature of her Knee Devices or that the devices had been recalled.

28. On May 24, 2023, Plaintiff underwent surgery for a failed right total knee replacement due to ongoing pain and knowledge that the products were defective.

5

COMPLAINT

29. On or about March 27, 2024 Plaintiff underwent surgery for a failed left total knee replacement due to ongoing pain and knowledge that the products were defective.

30. DEFENDANTS were aware of high rate of unexplained failures of the Knee Devices but did not provide this information to Plaintiff or Plaintiff's orthopedic surgeons.

31. After becoming aware of the defective nature of the Knee Devices, DEFENDANTS continued to market and sell the Knee Devices to orthopedic surgeons in California and throughout the county.

32. DEFENDANTS misrepresented the safety and effectiveness of the Knee Devices to Plaintiff. The device was defective, and DEFENDANT'S collective manufacture, sale, distribution and promotion of the defective device cause physical and emotional harm to Plaintiff as described below.

33. As a result of DEFENDANTS failure to provide this crucial information about the failure of the device to Plaintiff or Plaintiff's orthopedic surgeons, neither Plaintiff nor Plaintiff's orthopedic surgeons had reason to suspect that the source of Plaintiff's ongoing pain, illness and weakness was the result of the failure of the Knee Devices.

34. As a direct and proximate result of DEFENDANTS placing the defective product, the Knee Devices, into the stream of commerce and DEFENDANTS' further failure to communicate their knowledge of the widespread failure of the device, Plaintiff has suffered and continue to suffer both injuries and damages, including but not limited to past, present and future pain and suffering, disability, disfigurement, expenses for medical, hospital, monitoring, rehabilitative and pharmaceutical costs, and lost wages or earnings.

## FIRST CAUSE OF ACTION

### (Negligence, against all Defendants)

35. Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

6

COMPLAINT

36.    At all times herein mentioned, DEFENDANTS, and each of them, had a duty to properly design, manufacture, test, inspect, package, label distribute and market the Knee Devices

37.    At all times herein mentioned, DEFENDANTS, and each of them, knew, or in the exercise of reasonable care should have known, that the Knee Devices was a medical device of such a nature that if it was not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, and marketed for the use and purpose for which it was intended, it was likely to cause serious injury to individuals with the Knee Devices surgically implanted in their knees. Further, DEFENDANTS, and each of them, knew, or in the exercise of reasonable care should have known, that a failure of the Knee Devices exposed each implanted individual to the serious consequences of having to undergo additional surgery for revisions of failed.

38.    DEFENDANTS, and each of them, so negligently and carelessly designed, manufactured, tested or failed to test, inspected or failed to inspect, packaged, labeled, distributed, recommend, displayed and sold said product that the product was a defective and dangerous product, and unsafe for the use and purpose for which it was intended when used and applied as recommend by the DEFENDANTS, and each of them.

39.    Because of the aforementioned negligence of the DEFENDANTS, each of them, in the design, manufacture, testing, inspection, packaging, labeling, distribution, recommendation, display, and sale of said product, said product caused extreme pain to Plaintiff and required Plaintiff to undergo additional revision surgeries.

40.    As a proximate result of the negligence of DEFENDANTS, and each of them, Plaintiff suffered grievous personal injury in having to suffer for a period years with a very painful defective implant in her knees, and further were required to undergo a very painful and invasive revision surgery to remove the parts of the defective Knee Devices to be replaced with another total knee replacement system.

7

COMPLAINT

41.    The requisite post-surgical therapies and the full nature and extent of said injuries are ongoing and not fully known to Plaintiff at this time, but Plaintiff is informed and believe and therefore allege that said injuries are permanent by reason of the foregoing.

42.    As a further proximate result of the negligence of the DEFENDANTS, and each of them, Plaintiff has incurred, and will continue to incur, medical, surgical and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Res Ipsa Loquitor, against all Defendants)

43.    Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

44.    The character of the defective failure of the Knee Devices was such that it would not ordinarily occur without negligence.

45.    The DEFENDANTS designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed and sold the Knee Devices. As such the Knee Devices was under the custody and control of the DEFENDANTS.

46.    DEFENDANTS and their agents were in control of the Knee Devices at issue in this lawsuit at the time the negligence occurred in the design, manufacture and warranties of the defective product so that the reasonable probabilities point to the DEFENDANTS and support a reasonable inference that DEFENDANTS were the negligent parties.

47.    DEFENDANTS had superior knowledge or means of information to determine the cause of the incident that is the basis of this lawsuit

48.    By reason of the above and foregoing circumstances, among others, the jury is permitted to infer the DEFENDANTS negligence in designing, manufacturing, testing, inspecting, packaging, labeling, distributing, and marketing of the Knee Devices.

8

COMPLAINT

## THIRD CAUSE OF ACTION

### (Breach of Express Warranty, against all Defendants)

49.     Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

50.     At all times herein mentioned, between at least 2007 and 2017, DEFENDANTS, and each of them, utilized advertising media to urge the use and application of the Knee Devices and expressly warranted to Plaintiff and other members of the general public that the Knee Devices was effective, proper, and safe for its intended use.

51.     Plaintiff relied on the said express warranty representations of the DEFENDANTS, and each of them, in the purchase of the Knee Devices, and said representations became apart of the basis of the decision by the Plaintiff and her physicians in selecting the Knee Devices for the two total knee replacements undergone by Plaintiff.

52.     Said express warranty representations were false in that the Knee Devices has not been adequately designed, manufactured, or tested and was defective. As such, DEFENDANTS, and each of them, thereby breached said warranty.

53.     As a proximate result of said effects in said product, resulting in the breach of express warranty of DEFENDANTS, and each of them, as alleged above, Plaintiff suffered grievous personal injury by living with a painful, defective implant in her knees and was required to undergo two separate painful and invasive revision surgery to remove the parts of the defective Knee Devices when it was replaced with another total knee replacement system.

54.     As a proximate result of said defects in the Knee Devices resulting in the breach of express warranty of DEFENDANTS, and each of them, as alleged above, Plaintiff have incurred, and will continue to incur, medical, surgical and other related expenses, the full  nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial. Plaintiff is informed and believe and therefore allege that said injuries are permanent.

9

COMPLAINT

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty, against all Defendants)

55.    Plaintiff repeats, re-alleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

56.    Prior to and at the time the DEFENDANTS sold the Knee Devices to Plaintiff and prior to the time Plaintiff was implanted with the defective Knee Devices, DEFENDANTS, and each of them, impliedly warranted to Plaintiff that the Knee Devices were of merchantable quality and safe for the use for which it was intended by the DEFENDANTS, a namely a safe total knee replacement that would not require revision surgery.

57.    DEFENDANTS relied on the safety and merchantability of the product created and sold by DEFENDANTS, and each of them, when selecting and selling the Knee Devices. During their surgeries, and until her Knee Devices were removed during the revision surgery, Plaintiff used the product in a foreseeable and intended manner.

58.    The Knee Devices were not safe for its intended use, or of merchantable quality as warranted by the DEFENDANTS, in that the Knee Devices failed, became loose and caused Plaintiff excessive pain.

59.    The Knee Devices caused severe and grievous injuries to Plaintiff, subjecting Plaintiff to great pain and two additional revision surgery to remove the defective Knee Devices from Plaintiff's body.

60.    As a result of the defects in the Knee Devices and the breach of implied warranty of DEFENDANTS, as alleged above, Plaintiff suffered grievous personal injury. Plaintiff had to suffer for a period of months or years with a painful defective implant in her knees, after which Plaintiff were required to undergo a very painful and invasive revision surgery to remove the parts of the defective Knee Devices and replace it with another total knee replacement system.

10

COMPLAINT

61.    As a result of said defects in said product and the breach of implied warranty of DEFENDANTS, as alleged above, Plaintiff has incurred, and will continue to incur, medical, surgical, and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to the proof at trial.

## FIFTH CAUSE OF ACTION

**(Strict Products Liability for Manufacture and Design Defects and Failure to warn, against All DEFENDANTS)**

62.    Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in this Complaint as set forth in full herein.

63.    At all times mentioned herein, DEFENDANTS, and each of them, designed, manufactured, assembled, tested, inspected, maintained, distributed, marketed, promoted, advertised, and/or sold the Knee Devices and their component parts that were implanted in Plaintiff for use by patients including Plaintiff, and physicians and hospitals in treating members of the general public. DEFENDANTS, and each of them, also designed, manufactured, assembled, tested, inspected, maintained, distributed, marketed, promoted, advertised, and/or sold the labeling and instructions for the Knee Devices and their component parts that were implanted in Plaintiff for use by patients, including Plaintiff, and physicians and hospitals in treating members of the general public.

64.    At all times mentioned herein, DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the Knee Devices, their component parts and its labeling and instructions were a product of such a nature that if they were not properly designed, manufactured, assembled, compounded, tested, inspected, fabricated, constructed, analyzed, distributed, serviced, merchandized, recommended, advertised, promoted, marketed and sold for the use and purpose for which they were intended, they were likely to injure the person or persons upon whom they were used.

11

COMPLAINT

65.     At the time of the Plaintiff's surgeries the Knee Devices were being used for the purpose for which it was intended and the way it was intended to be used. After being implanted with the Knee Devices, Plaintiff used the Knee Devices as knee replacements in a manner for which it was reasonably foreseeable that it would be used. DEFENDANTS knew that the patients, including Plaintiff, would use the subjected to the Knee Devices, their component parts and their labeling and instructions without being able to inspect them or become aware of their defective nature. Plaintiff did not know and had no reason to suspect or know that the Knee Devices, their component parts or their labeling and instructions were defective and unsafe for use.

66.     The Knee Devices, their component parts, their labeling, and its instructions were defective at the time of its design, manufacture, testing, production, inspection, sale and distribution, including lack of warnings or adequate consumer information at the time it was placed in the stream of commerce. The products instructions and direction for implantation failed to warn of the dangerous propensities of the said product, which risks were known or reasonably scientifically knowable to DEFENDANTS. The DEFENDANTS, and each of them, know or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

67.     Specifically, DEFENDANTS knew or should have known that the Knee Devices defective and subject to recall

68.     The Knee Devices were implanted in Plaintiff without substantial change in their condition in which it was sold.

69.     DEFENDANTS, and each of them, failed to warn consumers in general, Plaintiff or Plaintiff's physicians of the risk of the Knee Devices.

70.     As a result of the defect of the Knee Devices, Plaintiff suffered serious injury and pain and required two separate painful invasive revision surgeries to replace the defective Knee Devices, which caused Plaintiff to sustain the injuries and damages set forth herein.

12

COMPLAINT

71.    Plaintiff have incurred, and will continue to incur, medical and surgical expenses, loss of earnings and earning capacity, and other related expenses, the full nature and extent and amount of which are not yet known to the Plaintiff, in an amount according to proof at trial.

72.    Plaintiff is informed and believe that DEFENDANTS, and each of them, knew that the Knee Devices had a higher than normal risk of failure for a similarly designed and manufactured medical device when used for the purpose for which the DEFENDANTS foreseeably intended it to be used, and that DEFENDANTS had prior notice and knowledge from several sources that the Knee Devices, their component parts and their labeling presented a foreseeable risk of harm to Plaintiff and the general public. DEFENDANTS, and each of them, acted with malice, fraud, or oppression towards the Plaintiff in allowing a dangerous product to be used by members of the public without proper warning of the unreasonable risk of failure. As such, DEFENDANTS, and each of them, engaged in despicable conduct with a conscious disregard for the rights or safety or others, and subjected the Plaintiff to cruel and unjust hardship and physical pain with a conscious disregard of her rights. DEFENDANTS, and each of them knew or should have know of the probable harmful consequences of its wrongful acts in manufacturing and distributing a defectively designed product, and willfully and deliberately failed to act to avoid those consequences.

73.    As a result of the DEFENDANTS' conduct as alleged herein, Plaintiff is entitled to exemplary and punitive damages.

WHEREFORE, Plaintiff prays for judgement against each DEFENDANT as follows:

1.  For past and future general damages, according to proof;

2.  For past and future medical and incidental expenses, according to proof;

3.  For past and future loss of earnings and/or earning capacity, according to proof;

4.  For future medical monitoring costs, according to proof;

5.  For punitive and exemplary damages in a n amount to be determined at trial;

13

COMPLAINT

6. For prejudgment interest on all damages as is allowed by the laws of the State of California;

7. For past and future mental and emotional distress, according to proof;

8. For past and future costs of suit incurred herein;

9. For a disgorgement of profits, according to proof; and

10. For such other and further relief as the Court deems just and proper.

Dated: April 22, 20224

By: _____

DUSTIN J. DYER
Attorney for Plaintiff

14

COMPLAINT